IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Phillip Chludzinski, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:20-cv-163 |
| Plaintiff, | Judge Cathy Bissoon |
| v. | |
| NWPA Pizza, Inc., *et al*, | |
| Defendants. | |

PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS AND
COLLECTIVE ACTION SETTLEMENT

Plaintiff Phillip Chludzinski asks the Court to preliminarily approve the settlement between Plaintiff and Defendants NWPA Pizza, Inc. and Paul Mohtashemi (collectively, "the parties"). The proposed Settlement Agreement, attached as Exhibit 1, resolves the collective/class-wide claims raised in this lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.  Plaintiff asks that the Court:

(1) Preliminarily approve the proposed settlement.

(2) Approve the content, form, and distribution of the class notice.

(3) Preliminarily approve the service award for the Plaintiff.

(4) Provisionally approve Class Counsel's request for attorneys' fees and costs.

(5) Schedule a fairness hearing approximately 150 days after preliminary approval.

The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

*/s/ Andrew Biller*
Andrew R. Biller
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

www.billerkimble.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Phillip Chludzinski, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:20-cv-163 |
| Plaintiff, | Judge Cathy Bissoon |
| v. | |
| NWPA Pizza, Inc., *et al*, | |
| Defendants. | |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

## 1. Introduction

Plaintiff Phillip Chludzinski and Defendants NWPA Pizza, Inc. and Paul Mohtashemi have reached an agreement to resolve this lawsuit. Plaintiff asks the Court to preliminarily approve the parties' Settlement Agreement, attached hereto as Exhibit 1. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

## 2. Background of the Lawsuit and the Claims

Plaintiff Phillip Chludzinski was a pizza delivery driver for Defendants' Domino's franchise. Defendants operated approximately five Domino's locations in Pennsylvania during the relevant time.

On June 26, 2020, Plaintiff filed this lawsuit on behalf of himself and similarly-situated delivery driver employees. Doc. 1. Shortly thereafter, on August 7, 2020, Plaintiff filed a Motion

to Send Notice to Similarly Situated Employees. Doc. 4. Rather than engage in motion practice relating to the Motion to Send Notice, the parties entered into a stipulation to send FLSA collective action notice. The parties reached an agreement and, on September 25, 2020, jointly moved to send FLSA collective action notice. Doc. 15. Notice was distributed to 239 delivery drivers between October 29, 2020 and December 28, 2020. At the close of the notice period, 58 delivery drivers submitted consent to join forms. *See* Docket. After the close of the FLSA collective action notice period, the parties attended mediation and reached the Settlement Agreement now presented to this Court.

This lawsuit alleges several wage and hour claims, all centered on Defendants' policy of reimbursing delivery drivers for the use of their vehicles. Specifically, Defendants require Plaintiff and the other delivery drivers to provide their own vehicles to deliver the Defendants' pizza and other food. The parties' dispute centers on whether Defendants adequately reimbursed Plaintiff and other drivers for their vehicle expenses.

Plaintiff contends that, in order to adequately reimburse delivery drivers, employers must either (1) track and reimburse each drivers' actual expenses or (2) reimburse each driver at the IRS mileage rate. *See, e.g., Waters v. Pizza to You, LLC,* No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604, *6-7 (S.D. Ohio May 7, 2021), citing DOL Field Operations Handbook § 30c15(a)(2000). Plaintiff alleges that Defendants did neither and this under-reimbursement dropped the delivery drivers' wages below the legally-permissible minimum wage.

Defendants argue, however, that they are permitted to "reasonably approximate" the employee's expenses and reimburse that amount. *See Kennedy v. Mountainside Pizza, Inc.*, 2020

U.S. Dist. LEXIS 154792, at *14 (D. Colo. Aug. 26, 2020). Defendants further argue that their reimbursement met this standard and, accordingly, there has been no underpayment.

If Plaintiff's position prevailed, then the underpayment would trigger a number of wage-related claims, including state and federal minimum wage and overtime claims. If Plaintiff proved certain other facts, Plaintiff could also seek liquidated damages under the FLSA and/or Pennsylvania minimum wage law. On the other hand, if Defendants' position prevailed, Defendants could prove that either (1) they met the applicable legal standard (meaning Plaintiff is not entitled to anything) or (2) any under-reimbursement was minimal, thereby greatly reducing Plaintiff's damages.

**3. Settlement Negotiations**

The parties' Joint Motion to send FLSA collective action notice provided that, after the close of the notice period, Defendants would provide Plaintiff with data sufficient to evaluate his claims and the parties would attend a mediation. Shortly after the notice period closed, Defendants provided Plaintiff with information regarding the number of miles driven by delivery drivers and the amount of reimbursements paid to delivery drivers during the relevant time period. With this information, Plaintiff was able to calculate the total possible damages in the case.

On February 26, 2021, the parties attended mediation with retired United States Magistrate Judge F. Bradford Stillman. Mediation was an all-day affair lasting until at least 9 p.m. In the end, the parties reached the settlement currently before the Court.

The settlement was reached at a relatively early stage in the case, but the parties exchanged sufficient information to evaluate the strengths and weaknesses of the claims asserted. The parties

are also represented by counsel who are experienced in pizza delivery driver litigation, so they were able to quickly evaluate the claims and reach a settlement that is fair, adequate, and reasonable.

### 4. Summary of Settlement Terms

The Agreement requires Defendants to pay a total of $303,750.00 to resolve Plaintiff's and the putative class members' claims in this lawsuit. The $303,750 is inclusive of expenses, service awards, and attorney's fees.

The fund will be distributed to every class member, without requiring anyone to submit a claim form. Each class member will receive his or her prorated share, based on the miles that each class member drove for Defendants. Those who submitted an FLSA consent to join form before March 31, 2021 will have their miles calculated at 1.25× to account for the fact that they are entitled to FLSA liquidated damages for a longer portion of the relevant time period.

The settlement provides a release of wage and hour claims arising from the facts asserted in Plaintiff's complaint. Moreover, while the settlement provides that all class members release their Pennsylvania state law claims, only those class members who actually cash or negotiate their check will release their FLSA claims.

The claims administrator will maintain any funds that are not cashed within 160 days in a contingency fund until March 1, 2024, the date the statute of limitations runs on claims that arose during the settlement period. Until March 1, 2024, any class member who did not cash or negotiate their check can request their check be re-issued by the claims administrator. Only at the conclusion of the contingency period, on March 1, 2024, will any remaining funds be distributed *cy pres*, with 50% of the remaining funds going to the Crawford Heritage Community Foundation and 50% of the remaining funds going to the Domino's Partners Foundation.

The Settlement Agreement also provides that Defendants will not contest Plaintiff's counsel's application for 1/3 of the settlement fund as attorneys' fees and reimbursement of advanced litigation expenses, will not contest Plaintiff's request for a service award, and provides that the costs associated with claims administration will be paid by Defendants.

## 5. Legal Standard and Argument

The Court should approve the parties' settlement agreement because it resolves claims raised under the Fair Labor Standards Act and because it resolves state law wage and hour claims on a class-wide basis.

### 5.1. Standard for FLSA Settlement Approval

"Congress enacted the FLSA for the purpose of 'protecting all covered workers from substandard wages and oppressive working hours.'" *Bettger v. Crossmark, Inc.*, No. 1:13-cv-2030, 2015 U.S. Dist. LEXIS 7213, at *8 (M.D. Pa. Jan. 22, 2015.) Accordingly, in order "to safeguard employee rights made mandatory by the statute, a majority of courts have held that bona fide FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit." *Bettger* at *8. As the district court noted in *Bettger*, "[a]lthough the Third Circuit has not addressed whether such § 216(b) actions claiming unpaid wages may be settled privately without first obtaining court approval, district courts within the Third Circuit have followed the majority position and assumed that judicial approval is necessary." *Id.* at *8-9. Moreover, "[i]n the absence of guidance from the Third Circuit, courts have routinely employed the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), to evaluate proposed settlement agreements." *Bettger* at *9.

"When parties present to the district court a proposed FLSA settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *2 (W.D. Pa. Oct. 22, 2019). "[I]f the Court determines that the settlement concerns a 'bona fide dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Id.* at *3. When determining whether an FLSA settlement is "fair and reasonable," some courts in the Western District of Pennsylvania consider the factors considered for Rule 23 final approval detailed in the next section. *See, e.g., id.* at *8.

### 5.2.    Standard for Preliminary Approval of Rule 23 Settlements

When evaluating a Rule 23 settlement, courts engage in a two-step process. *See, e.g., Ross v. Advest, Inc.*, No. 06-569, 2008 U.S. Dist. LEXIS 133019, at *12 (W.D. Pa. Mar. 19, 2008).First, courts evaluate the settlement for preliminary approval. *Id.* Next, courts evaluate settlement for final approval and hold a fairness hearing. *Id.* In between these two events, notice is sent out to the class.

A court's consideration of preliminary approval is relatively limited. "At this juncture, however, the court must only make 'a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the fairness hearing.'" *Id.* at *12; *see also, e.g., Rivera v. Leb. School Dist.,* No. 1:11-cv-147, 2013 U.S. Dist. LEXIS 32021, at *3 (M.D. Pa. Mar. 6, 2013) (explaining

6

that at this stage, courts "determine whether the agreement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."). In contrast, at final approval, courts conduct a robust evaluation, focusing on nine factors. *See Sakalas v. Wilkes-Barre Hosp. Co.,* No. 3:11-CV-0546, 2014 U.S. Dist. LEXIS 63823, at *5 (M.D. Pa. May 8, 2014). Those factors include:

1. the likely complexity, length, and expense of continued litigation;

2. the class's reaction to the settlement;

3. the stage of the proceedings and amount of discovery completed;

4. the risks of establishing liability;

5. the risks of establishing damages;

6. the risks of maintaining the class action through trial;

7. the defendants' ability to withstand a greater judgment;

8. the range of reasonableness of the settlement fund in light of the best possible recovery; and

9. the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*

### 6. The Settlement provides a fair resolution of disputed claims.

For purposes of preliminary approval, the Rule 23 settlement factors need not be considered. However, for simplicity's sake, we will address them here. In doing so, Plaintiff will necessarily demonstrate that, at a minimum, preliminary approval is appropriate. Discussion of

these factors will also make clear that this settlement meets the requirement for FLSA approval, *i.e.*, the settlement resolves a bona fide dispute and the settlement is fair and reasonable.

**The Likely Complexity, Length, and Expense of Continued Litigation (Factor 1).** This case is a hybrid class/collective action under federal and state wage and hour laws. As other courts have held, "FLSA actions are complex." *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018). Hybrid class/collective actions that involve the FLSA and state law wage claims are the "most complex type." *Id.*

Moreover, this type of case—*i.e.*, one involving delivery driver reimbursement rates—is especially complex. In evaluating a settlement in in another pizza delivery driver case, one court held

> this case involved complex issues of fact and law regarding the legally-mandated reimbursement rate for delivery drivers. These issues would require substantial briefing, discovery, and potential expert testimony. Resolving these issues and the remaining discovery, procedural, merits, and damages questions would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this weighs in favor of the settlement.

*Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, *5 (S.D. Ohio Oct. 17, 2018). As in *Arledge*, this factor weighs in favor of settlement.

**The Class's Reaction to the Settlement (Factor 2).** This factor cannot be evaluated because the class has not yet been informed about the settlement. Plaintiff will address this factor in his Motion for Final Settlement Approval, after the notice process is complete.

**The Stage of the Proceedings and Amount of Discovery Completed (Factor 3).** This case settled at a relatively early stage in the proceedings. The parties agreed to distribute collective action notice and agreed to an exchange of information for settlement purposes that would allow both sides to be "fully informed as to the strengths and weaknesses of their respective positions."

*Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *12 (S.D. Ohio Nov. 5, 2020). Counsel for both parties have litigated dozens of pizza delivery driver under-reimbursement cases and were informed by those prior cases when evaluating the strengths and weaknesses of this case. In approving a different pizza delivery drivers settlement, the Southern District of Ohio said of Plaintiff's counsel: "Plaintiff's counsel, having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. Southern Ohio Pizza*, No. 1:17-cv-146, 2019 U.S. Dist. LEXIS 11019, *14 (S.D. Ohio Jan. 18, 2019). Likewise, Defendants' counsel, Fisher & Phillips, has extensive experience and expertise in pizza delivery driver litigation. Thus, the parties were able to accurately assess the claims in this case. This factor supports approval of the settlement.

   ***The Risks of Establishing Liability and Damages (Factors 4 and 5)***. This case presents substantial risks for Plaintiff and the class members related to establishing liability and damages.

   In large part, the underlying facts are not in dispute and are discernible from Defendants' business records. Specifically, Defendants' delivery drivers drove approximately 2,184,808.52 miles during the relevant time. During that time, Defendants reimbursed the drivers $655,016.58. This is an average reimbursement rate of approximately $0.30 per mile.

   A key dispute in this case centers on determining the appropriate legal standard. This is a vigorously disputed legal issue across the nation. In the last two years, numerous courts and arbitrators have come to divergent opinions on the proper legal standard for reimbursing delivery drivers. Some support Plaintiff's position. *See, e.g., Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790. Some support Defendants' position. *Kennedy*, 2020 U.S. Dist. LEXIS 154792. On

August 31, 2020, the Department of Labor weighed in and seemingly supported Defendants' position. *See* Opinion Letter, FLSA2020-12.

Thus, both parties risked an adverse ruling on several key issues including: (1) does the IRS rate apply or can Defendants reasonably approximate the drivers' expenses? and (2) if "reasonable approximation" applied, what *is* a reasonable approximation? Those two issues alone, if resolved in Defendants' favor, could have resulted in defense verdict, with Plaintiff receiving no damages for the case's primary claim. On the flip side, if Plaintiff prevailed on either issue, it would have resulted in a financially devastating, multi-million dollar verdict.

If Plaintiff prevailed and the Court adopted the standard from the DOL Handbook, then the under-reimbursed amount is approximately $546,628.11. From there, Plaintiff would have sought liquidated damages under the FLSA at 1× unpaid wages, liquidated damages under the Pennsylvania Wage Payment and Collection Law at 25% of unpaid wages, and any amount by which Defendants were unjustly enriched. While these additional amounts could be very substantial, but it is unlikely Defendants would have been able to pay a full judgment amount, especially after paying the cost of defense for a trial and appeal.

If Defendants prevailed, however, then the parties would dispute whether Defendants "reasonably approximated" the drivers' expenses. This dispute is generally determined by reference to competing expert witnesses who testify as to what reimbursement rate is "reasonably approximate" to the drivers' expenses. Defendants would then have the opportunity to prove that the amount they paid meets this standard, thereby eliminating Plaintiff's claims. Alternatively, Defendants could prove that, at a minimum, the under-reimbursement was only a few cents, thereby reducing Plaintiff's potential damages to a very small amount. And, of course, Plaintiff

could prove that the IRS rate is, in fact, the proper "approximation" of expenses. *See, e.g., Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014).

As it stands, the Agreement provides substantial relief, particularly considering the unsettled law in this area. This factor supports approval of the settlement.

***The Risk of Maintaining the Class Through Trial (Factor 6)***. Here, the parties have very different outlooks on the propriety of class certification through trial. As with the reimbursement standard, there is no circuit court guidance. Certainly, a number of cases grant class certification, but few deal with decertification at the conclusion of discovery. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, Case No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 6, 2018) ("*Brandenburg I*") (granting Rule 23 class certification of a pizza delivery driver case). Here, Defendants would have opposed class certification if a settlement had not been reached. *See Ferreras v. American Airlines, Inc.*, 947 F.3d 178, 180; 183-185 (3d Cir., Dec. 24. 2019) (explaining that a "rigorous analysis" is required for class certification). This factor supports approval of the settlement.

***Defendants' Ability to Withstand a Greater Judgment (Factor 7)***. This is one of the most important factors supporting approval of the settlement. Defendants own 5 Domino's Pizza stores with low profit margins. During mediation with Magistrate Judge Stillman, Defendants repeatedly expressed that they did not have substantial assets to put toward a larger settlement than the one entered by the parties. Based on the information available to Plaintiff, this settlement represents about the most Defendants can reasonably pay. Moreover, this amount is in proportion with other pizza delivery driver settlements (many of which were also based primarily on ability to pay) negotiated with Plaintiff's counsel. *See, e.g., Arledge v. Domino's Pizza, Inc.*, No. 3:13-cv-386, 2018

11

U.S. Dist. LEXIS 179474 (S.D. Ohio Oct. 17, 2018) (a $1,100,000 settlement on behalf of drivers at 20 stores); *Mullins,* 2019 U.S. Dist. LEXIS 11019 (a $1,425,000 settlement on behalf of drivers at 20 stores); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *2 (S.D. Ohio Nov. 25, 2019) ("*Brandenburg II*") (approving settlement of $1,140,000 on behalf of drivers at 18 stores); *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio) ($750,000 settlement on behalf of drivers at approximately 15 stores); *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 U.S. Dist. LEXIS 35941, at *15 (N.D. Ill. Feb. 26, 2020) (settlement of $807,500 on behalf of drivers at 15 stores).

***The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All of the Attendant Risks of Litigation (Factors 8 and 9).*** Based on Defendants' records, Plaintiff was able to calculate the potential damages in this case.

If using Plaintiff's asserted approximate IRS standard business mileage rate of $.55 per mile, the delivery drivers' total possible unpaid wages were $546,628.11. Those who filed a FLSA consent to join form could also be entitled to an additional amount equal to their unpaid wages as liquidated damages. Based on the data provided by Defendants, Plaintiff estimates the opt ins would therefore potentially be entitled to $154,301.64 in liquidated damages. In addition, the entire class could be entitled to liquidated damages under Pennsylvania law at 25% of unpaid wages, or $136,657.03.

Thus, all in, the maximum amount potentially owed to the class is $837,586.78, plus attorneys' fees and costs. Obviously, Defendants had a number of arguments to reduce this number significantly, even to zero. As it is, the settlement represents approximately 56% of the class's best-day unpaid wages and 36% of the class's best-day total damages. Pure litigation risk, however, is

not the only risk in this case. This type of case is expensive and time-consuming. It could involve expert testimony and the costs associated with those experts. All of this would present a drain on Defendants' resources such that a settlement now may allow for a superior recovery, even if Plaintiff ultimately proved successful at the conclusion of litigation. An uncollectable judgment of $800,000 is of far less value than a collectable settlement of $303,750.

Plaintiff believes that this settlement represents a fair, adequate, and reasonable resolution of this lawsuit. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding a settlement of 10% of the total sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *20 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average). This factors supports settlement approval.

**7. The proposed attorneys' fee award is reasonable and should be approved.**

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($101,250.00). This is a standard amount in this type of case. Class counsel also seeks reimbursement of litigation costs. Defendants have agreed not to object to this award.

When awarding attorney's fees in common fund cases, courts in the Third Circuit generally favor the percentage-of-recovery method. *In re Diet Drugs*, 584 F.3d 524, 540 (3d Cir. 2009). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create,

discovery, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 187 (3d Cir. 2005) (citations omitted). An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *5; *see also, e.g., Sullivan v. Lewisburg Pizza,* No. 3:18-cv-1455, Doc. 98 (M.D. Pa. Feb. 19, 2021) (approving 1/3 attorneys' fees in pizza delivery driver settlement).[1]

The Settlement Agreement is not conditioned on an award of attorneys' fees. Thus, the Court need not make a final decision as to fees and costs now. Instead, Plaintiff asks that the Court provisionally approve the fee award, subject to any objections from Class Members prior to final approval. Provisionally approving the fee award at this stage serves a useful function, however, because the Class Members can be accurately informed in the notice as to what to expect with respect to attorneys' fees and costs.

Regardless, Class Counsel will expend additional time on this case during the notice and approval process, which would affect the Court's final evaluation of the final fee award, to the extent that the Court conducts a lodestar crosscheck. Likewise, Class Counsel will incur additional expenses between now and final approval, including, for example, costs of sending notice to the

---

[1] *See also Crevatas v. Smith Smith Mgmt. & Consulting, LLC*, 2017 U.S. Dist. LEXIS 40857, at *13 (M.D. Pa. Mar. 22, 2017). "An award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit." *See Martin v. Foster Wheeler Energy Corp.*, 2008 WL 906472, at *5 (M.D. Pa. 2008); *In re Ravisent Tech., Inc. Sec. Litig.*, No. Civ. A. 00-cv-1014, 2005 WL 906361, at *11 (E.D. Pa. Apr. 18, 2005) (awarding one-third recovery of $3.3 million settlement fund, plus expenses); *In re Penn Treaty Am. Corp.*, Civ. A. No. 01-1896 (E.D. Pa. Feb. 5, 2004) (awarding 30% of $2.3 million settlement fund); *In re Corel Corp. Sec. Litig.*, 293 F.Supp.2d 484, 495-98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund, plus expenses); *Brumley v. Camin Cargo Control, Inc.*, Nos. 08 Civ. 1798, 2012 WL 1019337, at * 12 (D.N.J. Mar. 26, 2012) (granting attorneys' fee request of one-third of $3.9 million settlement fund in wage and hour class action); *Williams v. Aramark Sports, LLC*, No. 10 Civ. 1044, 2011 WL 4018205, at *10-11 (E.D. Pa. Sept. 9, 2011) (granting attorneys' fees of 33% of $587,500 common fund in wage and hour class action); *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011) (approving fee award of 33% in wage and hour class action).

Class Members. At the final fairness hearing, the Court will have a full record to be able to evaluate Class Counsels' request for fees and a reimbursement of expenses.

### 8. The incentive payment is reasonable, and similar payments are routinely awarded.

Plaintiff requests a $10,000 incentive/service award in this case. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Haught v. Summit Resources, LLC*, No. 1:15-cv-0069, 2016 U.S. Dist. LEXIS 45054, at *19 (M.D. Pa. Apr. 4, 2016).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *21. The same considerations apply to this case as well.

The incentive award proposed here has been approved in a number of similar pizza delivery driver settlements. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases).

### 9. For settlement purposes, the Court should certify a class and collective action.

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions are especially appropriate in wage and hour lawsuits where

individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiff asks the Court to certify the following hybrid class/collective:

> All non-exempt hourly employees of NWPA Pizza, Inc. and/or Paul Mohtashemi who received mileage reimbursement related to the delivery of Domino's pizza. The Class Period is from June 26, 2017 to February 28, 2021.

Defendants consent to certification of the above class for settlement purposes only. In doing so, Defendants do not waive any arguments they have opposing class/collective action certification, should the Court decline to approve the settlement.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Courts have repeatedly granted Rule 23 class certification in similar cases filed by food delivery drivers. *See, e.g.*, *Waters v. Pizza to You, LLC*, Case No. 3:19-cv-371, 2021 U.S. Dist. LEXIS 11743 (S.D. Ohio Jan. 22, 2021); *Brandenburg I*, 2018 U.S. Dist. LEXIS 189878; *McFarlin v. Word Enters., LLC*, Case No. 16-cv-12536, 2017 U.S. Dist. LEXIS 164968 (E.D. Mich. Oct. 5, 2017); *Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-01335 AGF, 2013 U.S. Dist. LEXIS 181749 (E.D. Mo. Dec. 31, 2013); *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352, at *18 (D. Colo. June 1, 2011). As described below, all the requirements for class certification are met.

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Pennsylvania law does not contain such a requirement. *See, e.g., Acevedo v. BrightView Landscapes, LLC,* No. 3:13-2529, 2017 U.S. Dist.

16

LEXIS 163870, at *63 (M.D. Pa. Oct. 2, 2017) (approving a hybrid FLSA/state law settlement). Consequently, plaintiffs may maintain class actions for unpaid wages under Civ. R. 23. *Id.*

Because the standard to certify a collective action is easier to meet than the standard under Rule 23, meeting the Rule 23 standard also meets the collective action standard. Therefore, collective action certification is also appropriate here.

### 9.1.    Plaintiff has satisfied the four Rule 23(a) prerequisites for class certification.

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement, each of these requirements is satisfied here. Defendants do not oppose class certification for settlement purposes only.

#### 9.1.1.  Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Here, during the relevant time, and as evidenced by the class list they provided for purposes of sending FLSA collective action notice, Defendants employed hundreds of class members that were subject to the pay policies alleged in the Complaint. This easily meets the numerosity requirement.

#### 9.1.2.  Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." A single common question is sufficient to certify a class.

Here, the legal theories and relevant facts are common to the class because the class consists of workers that were harmed in the same way. Plaintiff has identified numerous common questions of law or fact, including, but not limited to: (1) how much Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Outside of the settlement context—*i.e.*, when an employer disputed class certification—courts have found that class certification is appropriate for nearly identical claims. *See, e.g., Waters v. Pizza to You, LLC*, 2021 U.S. Dist. LEXIS 11743, at *27 (S.D. Ohio Jan. 22, 2021). This case meets the commonality requirement.

### 9.1.3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. Typicality "focuses on whether the interests of the class representative align[ ] with the interests of the absent class members such that the representative is working towards the benefit of the class as a whole." *Acevedo*, 2017 WL 4354809, at *6. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (*quoting Da La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). Typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Id*. "The Court should concentrate on the defendants' alleged

conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)." *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill.1999).

Here, Plaintiff is a member of the putative class and his claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiff maintains that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, the same or similar reimbursement rates applied to all class members. Whether Defendants' pay practices are illegal, is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so go the claims of the class." *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 640 (S.D. Ohio 2008). If Defendants' wage and hour practices violate Pennsylvania law as to Plaintiff, they violate Pennsylvania law as to the putative class members; and, accordingly, the typicality requirement is met here.

### 9.1.4.  Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) the named plaintiff's adequacy as class representative, and (2) the class counsel's adequacy. *Wall v. Sunoco, Inc.*, 211 F.R.D. 272, 279 (M.D. Pa. 2002). These two requirements are met here.

With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas*

*v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff's interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, Plaintiff's counsel is well-qualified to handle this matter. This case is one of many "delivery driver lawsuits" that Plaintiff's counsel is litigating across the nation. Through those cases, counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 50403 (S.D. Ohio Mar. 26, 2019) (motion to dismiss); *Hatmaker*, 2019 U.S. Dist. LEXIS 191790 (motion for summary judgment); *Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 U.S. Dist. LEXIS 171728, (S.D. Ohio Sept. 29 2019) (contested motion for conditional certification); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 U.S. Dist. LEXIS 161623 (S.D. Ohio Sept. 23, 2019) (motion to dismiss); *Brandenburg I*, 2018 U.S. Dist. LEXIS 189878 (contested motion for class certification). Thus, Plaintiff's counsel is well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *6 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The '[] delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"). Plaintiff's counsel have actively and vigorously pursued Plaintiff's (and the putative class members') claims in this case. Plaintiff's counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case.

**9.2.    Plaintiff has satisfied the Rule 23(b)(3) class certification requirements.**

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

### 9.2.1. Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for delivery drivers and whether Defendants paid that rate. These issues would be determined based on common proof, and common questions predominate in this case. *See, e.g., Swigart*, 288 F.R.D. at 186. As the court explained in *McFarlin*, the adequacy of Defendants' reimbursement policy will predominate in this case:

> [T]he general issue of the adequacy of the reimbursement policy/policies maintained by Defendants predominate over individual inquiries. Although the damages for each delivery driver will be an individual determination, the damages arise from a course of conduct that is applicable to the entire class: Defendants' payroll practices. Therefore, the predominance requirement is met.

2017 WL 4416451, at *4.

21

Although Plaintiff contends that the IRS standard mileage rate applies to drivers as a matter of law, even if not, an expert can opine on a class-wide reimbursement rate. *See generally Perrin*, 114 F.Supp.3d at 722 (considering Plaintiff's expert report in summary judgment determination). Thus, either way—IRS rate or reasonable approximation—one of the primary issues in this case, the appropriate reimbursement rate, is determinable on a class-wide basis, easily meeting the predominance requirement.

### 9.2.2.  A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g., Tedrow v. Cowles*, No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers."). Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Pennsylvania. A final resolution of Defendants' liability is also fair because the

case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

**10. The proposed notice conforms to federal law.**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See generally* Exhibit 1 to the settlement agreement, Notice of Settlement. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A).

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by first class mail and email.

**11. The Court should set a hearing for final approval.**

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 150 days after the Court grants preliminary approval of the proposed settlement. This date will allow a reasonable period for the class notices to be mailed and for class members to

object or opt-out of the settlement, but it will not unduly delay the case's adjudication. The timeline envisioned for administration is as follows:

| Time | Event |
|------|-------|
| Within 14 days of preliminary approval | Defendants will transmit class contact information to Class Counsel |
| Within 14 days of receiving the class list | The Claims Administrator will send the settlement notice to the class members |
| Up to 60 days after sending the notice | Class members can opt-out or object to the settlement |
| Within 14 days of the close of the notice period | The Claims Administrator will calculate award amounts and forward to the parties' counsel |
| Within 45 days of the close of the notice period | Plaintiff will draft and file a motion for final approval |
| Approximately 150 days after preliminary approval | The Court will hold a final fairness hearing |

## 12. Conclusion

Plaintiff asks the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsels' request for attorneys' fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the Class Notice to class members; and (5) setting a final fairness hearing date.

Respectfully submitted,

*/s/ Andrew Biller*
Andrew R. Biller
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

24

## Certificate of Service

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

_/s/ Andrew Biller_____
Andrew Biller