IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Phillip Chludzinski, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:20-cv-163 |
| Plaintiff, | Judge Cathy Bissoon |
| v. | |
| NWPA Pizza, Inc., *et al*, | |
| Defendants. | |

PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

Plaintiff Phillip Chludzinski asks the Court to approve the settlement between Plaintiff and Defendants NWPA Pizza, Inc. and Paul Mohtashemi (collectively, "the parties"). The proposed Settlement Agreement (Doc. 37-1) resolves the collective/class-wide claims raised in this lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only. The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

*/s/ Andy R. Biller*
Andrew R. Biller
Philip J. Krzeski (admitted *pro hac vice*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236

Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*pkrzeski@billerkimble.com*

www.billerkimble.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Phillip Chludzinski, | |
| *On behalf of himself and those similarly situated*, | Case No. 1:20-cv-163 |
| Plaintiff, | Judge Cathy Bissoon |
| v. | |
| NWPA Pizza, Inc., *et al*, | |
| Defendants. | |

## Memorandum in Support of Plaintiff's Unopposed Motion for Approval of Class and Collective Action Settlement

### 1. Introduction

Plaintiff Phillip Chludzinski and Defendants NWPA Pizza, Inc. and Paul Mohtashemi have reached an agreement to resolve this lawsuit. Plaintiff asks the Court to approve the parties' Settlement Agreement (Doc. 37-1). If approved, the Agreement will resolve the claims against Defendants that Plaintiff asserted in the lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

### 2. Background of the Lawsuit and the Claims

Plaintiff Phillip Chludzinski was a pizza delivery driver for Defendants' Domino's franchise. Defendants operated approximately five Domino's locations in Pennsylvania during the relevant time.

On June 26, 2020, Plaintiff filed this lawsuit on behalf of himself and similarly-situated delivery driver employees. Doc. 1. Shortly thereafter, on August 7, 2020, Plaintiff filed a Motion to Send Notice to Similarly Situated Employees. Doc. 4. Rather than engage in motion practice relating to the Motion to Send Notice, the parties entered into a stipulation to send FLSA collective action notice. The parties reached an agreement and, on September 25, 2020, jointly moved to send FLSA collective action notice. Doc. 15. Notice was distributed to 239 delivery drivers between October 29, 2020 and December 28, 2020. At the close of the notice period, 58 delivery drivers submitted consent to join forms. *See* Docket. After the close of the FLSA collective action notice period, the parties attended mediation and reached the Settlement Agreement now presented to this Court.

This lawsuit alleges several wage and hour claims, all centered on Defendants' policy of reimbursing delivery drivers for the use of their vehicles. Specifically, Defendants require Plaintiff and the other delivery drivers to provide their own vehicles to deliver the Defendants' pizza and other food. The parties' dispute centers on whether Defendants adequately reimbursed Plaintiff and other drivers for their vehicle expenses.

Plaintiff contends that, in order to adequately reimburse delivery drivers, employers must either (1) track and reimburse each drivers' actual expenses or (2) reimburse each driver at the IRS mileage rate. *See, e.g., Waters v. Pizza to You, LLC,* No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604, *6-7 (S.D. Ohio May 7, 2021), citing DOL Field Operations Handbook § 30c15(a)(2000). Plaintiff alleges that Defendants did neither and this under-reimbursement dropped the delivery drivers' wages below the legally-permissible minimum wage.

Defendants argue, however, that they are permitted to "reasonably approximate" the employee's expenses and reimburse that amount. *See Kennedy v. Mountainside Pizza, Inc.*, 2020 U.S. Dist. LEXIS 154792, at *14 (D. Colo. Aug. 26, 2020). Defendants further argue that their reimbursement met this standard and, accordingly, there has been no underpayment.

If Plaintiff's position prevailed, then the underpayment would trigger a number of wage-related claims, including state and federal minimum wage and overtime claims. If Plaintiff proved certain other facts, Plaintiff could also seek liquidated damages under the FLSA and/or Pennsylvania minimum wage law. On the other hand, if Defendants' position prevailed, Defendants could prove that either (1) they met the applicable legal standard (meaning Plaintiff is not entitled to anything) or (2) any under-reimbursement was minimal, thereby greatly reducing Plaintiff's damages.

On June 16, 2021, the parties presented the Settlement Agreement to the Court for preliminary approval. Doc. 37. The Court preliminarily approved the Settlement Agreement on July 21, 2021. Doc. 39.

Following approval, Plaintiffs employed a professional claims administrator (CAC Services Group) to send a notice of settlement to the putative class members. The Administrator sent notice by first class mail to approximately 319 individuals. Through address correction and skip-tracing, mail was returned as undeliverable for only 25 individuals (or approximately 7.8% of the class). No class member objected, and no class member opted out.

Plaintiff now asks the Court to provide final approval of the settlement, award fees, reimbursement of costs, and incentive awards.

3

### 3.  Settlement Negotiations

The parties' Joint Motion to send FLSA collective action notice provided that, after the close of the notice period, Defendants would provide Plaintiff with data sufficient to evaluate his claims and the parties would attend a mediation. Shortly after the notice period closed, Defendants provided Plaintiff with information regarding the number of miles driven by delivery drivers and the amount of reimbursements paid to delivery drivers during the relevant time period. With this information, Plaintiff was able to calculate the total possible damages in the case.

On February 26, 2021, the parties attended mediation with retired United States Magistrate Judge F. Bradford Stillman. Mediation was an all-day affair lasting until at least 9 p.m. In the end, the parties reached the settlement currently before the Court.

The settlement was reached at a relatively early stage in the case, but the parties exchanged sufficient information to evaluate the strengths and weaknesses of the claims asserted. The parties are also represented by counsel who are experienced in pizza delivery driver litigation, so they were able to quickly evaluate the claims and reach a settlement that is fair, adequate, and reasonable.

### 4.  Summary of Settlement Terms

The Agreement requires Defendants to pay a total of $303,750.00 to resolve Plaintiff's and the putative class members' claims in this lawsuit. The $303,750 is inclusive of expenses, service awards, and attorney's fees.

**<u>Distribution of Settlement</u>**

The distributions are as follows:

1.     First, all court-awarded amounts (i.e., for attorney's fees, service awards, expenses, etc.) will be subtracted from the $303,750.00. The remainder is the "Net Settlement Fund."

2.     Each Class Member's check will be equal to the Class Member's prorated share of the Net Settlement Fund based on the miles driven by each Class Member during the Class Period, divided by the total miles driven by all Class Members during the Settlement Period, with the miles driven by those who submitted a Consent to Join form on or before March 31, 2021 counted at 1.25x.

3.     Within 40 days of the Court granting final approval of this Settlement Agreement, the Administrator will issue checks to each Class Member who does not exclude themselves.

4.     Checks may be cashed or negotiated within 160 days of being issued. After 160 days, the check will be void. The face of each check will contain the following language: "Void after 160 days." The proceeds of any voided checks will be distributed to the Contingency Fund.

5.     The amount of any uncashed checks from the Settlement Fund will be retained in the Qualified Settlement Fund and referred to as the "Contingency Fund."

6.     Class Members may request that the Administrator reissue stale checks (i.e., checks that were not cashed within 160 days) and the Administrator shall reissue said checks 14 days after Notice to  Class and Defendants' Counsel unless a dispute arises.

7.     Class Members can make a claim against the Contingency Fund by contacting the Claims Administrator or Class Counsel via email or U.S. mail, or other means established by the Claims Administrator.  The Administrator may request any additional identifying information or documents (if any) that the Administrator reasonably believes necessary to confirm the identity of the Class Member and status as a Class Member.

8.     Distributions from the Contingency Fund shall be in the amount to replace checks previously distributed (less administrative expenses incurred for such replacements to the extent such are incurred by Claims Administrator, e.g., a stop payment fee).

9.     Distributions out of the Contingency Fund will be made 14 days after Notice to Class and Defendants' Counsel of the submission of a valid claim being received by the Administrator.

10.    Any unclaimed amounts in the Contingency Fund as of March 1, 2024 will be distributed fifty-percent to Crawford Heritage Community Foundation and fifty-percent to Domino's Partners Foundation, a 503(c)(3) non-profit organization

organized to help Domino's Team members in times of hardship and adversity. Distributions shall be made within 200 days after March 1, 2024.

11.     To the extent that there is a dispute regarding this process, the Parties and their Counsel will attempt to informally resolve the dispute. If informal resolution is unsuccessful, the Parties will request the assistance of the Claims Administrator, or if the Claims Administrator cannot resolve the dispute, the Parties shall submit the dispute to the Court for assistance in reaching resolution.

12.     Each check will be treated as expense reimbursement up to the IRS rate, which shall be a blended IRS rate of $.55 for purposes of this Settlement. Any amounts paid above that will represent liquidated damages and will not be considered wages or subject to withholding. A Form 1099 will issue to Class Members for monies paid as liquidated damages.

**Releases**

Opt in Plaintiffs and those who cash or negotiate their check agree to the following

release of claims:

> Each Opt-In Class Member and any Class Member who cashes or negotiates a settlement check releases all wage and hour claims against the Released Parties[1] accrued from June 26, 2017 through February 28, 2021 arising out of the facts asserted in the Lawsuit, that were made against NWPA or the Released Parties, including claims relating to failure to pay wages, the under-reimbursement of mileage and any other business expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, untimely payment claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) including any related claims for liquidated damages, penalties, attorneys' fees and costs, taxes (if applicable), service awards, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the wage and hour laws of Pennsylvania and any applicable federal, state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit, including the right to arbitrate said claims.

---

[1] The Settlement Agreement defines Released Parties as follows: The term "Released Parties" includes NWPA Pizza, Inc., Paul Mohtashemi, Jennifer Mohtashemi, and any related entities, along with all respective owners, members, stockholders, franchisors, including Domino's Pizza LLC (and its related entities), predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, insurers, subsidiaries, affiliates, insurance carriers and all persons acting by, through, under or in concert with them. Settlement Agreement, ¶ 6(B).

Settlement Agreement, ¶ 6(B). Class Members who did not opt in and do not cash their check will release their state law claims, as described below, but will not release their FLSA claims:

> Each Opt-In Class Member and any Class Member who cashes or negotiates a settlement check releases all wage and hour claims against the Released Parties accrued from June 26, 2017 through February 28, 2021 arising out of the facts asserted in the Lawsuit, that were made against NWPA or the Released Parties, including claims relating to failure to pay wages, the under-reimbursement of mileage and any other business expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, untimely payment claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) including any related claims for liquidated damages, penalties, attorneys' fees and costs, taxes (if applicable), service awards, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the wage and hour laws of Pennsylvania and any applicable federal, state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit, including the right to arbitrate said claims.

Settlement Agreement, ¶ 6(D).

## 5. Legal Standard and Argument

The Court should approve the parties' settlement agreement because it resolves claims raised under the Fair Labor Standards Act and because it resolves state law wage and hour claims on a class-wide basis.

### 5.1. Standard for FLSA Settlement Approval

"Congress enacted the FLSA for the purpose of 'protecting all covered workers from substandard wages and oppressive working hours.'" *Bettger v. Crossmark, Inc.*, No. 1:13-cv-2030, 2015 U.S. Dist. LEXIS 7213, at *8 (M.D. Pa. Jan. 22, 2015.) Accordingly, in order "to safeguard employee rights made mandatory by the statute, a majority of courts have held that bona fide FLSA disputes may only be settled or compromised through payments made under the supervision of the Secretary of the Department of Labor or by judicial approval of a proposed

settlement in an FLSA lawsuit." *Id*. As the district court noted in *Bettger*, "[a]lthough the Third Circuit has not addressed whether such § 216(b) actions claiming unpaid wages may be settled privately without first obtaining court approval, district courts within the Third Circuit have followed the majority position and assumed that judicial approval is necessary." *Id*. at *8-9. Moreover, "[i]n the absence of guidance from the Third Circuit, courts have routinely employed the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores, Inc. v. U.S. ex rel. U.S. Dep't of Labor*, 679 F.2d 1350, 1354 (11th Cir. 1982), to evaluate proposed settlement agreements." *Bettger*, 2015 U.S. Dist. LEXIS 7213, at *9.

"When parties present to the district court a proposed FLSA settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Kapolka v. Anchor Drilling Fluids USA, LLC*, No. 2:18-cv-01007-NR, 2019 U.S. Dist. LEXIS 182359, at *2 (W.D. Pa. Oct. 22, 2019). "[I]f the Court determines that the settlement concerns a 'bona fide dispute,' it will conduct a two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employee(s), and (2) the agreement furthers the FLSA's implementation in the workplace." *Id*. at *3. When determining whether an FLSA settlement is "fair and reasonable," some courts in the Western District of Pennsylvania consider the factors considered for Rule 23 final approval detailed in the next section. *See, e.g., id*. at *8.

### 5.2.    Standard for Preliminary Approval of Rule 23 Settlements

When evaluating a Rule 23 settlement, courts engage in a two-step process. *See, e.g., Ross v. Advest, Inc.*, No. 06-569, 2008 U.S. Dist. LEXIS 133019, at *12 (W.D. Pa. Mar. 19, 2008).

First, courts evaluate the settlement for preliminary approval. *Id.* Next, courts evaluate settlement for final approval and hold a fairness hearing. *Id.* In between these two events, notice is sent out to the class.

A court's consideration of preliminary approval is relatively limited. "At this juncture, however, the court must only make 'a preliminary determination on the fairness, reasonableness and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the fairness hearing.'" *Id.* at *12; *see also, e.g., Rivera v. Leb. School Dist.,* No. 1:11-cv-147, 2013 U.S. Dist. LEXIS 32021, at *3 (M.D. Pa. Mar. 6, 2013) (explaining that at this stage, courts "determine whether the agreement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval.").  In contrast, at final approval, courts conduct a robust evaluation, focusing on nine factors. *See Sakalas v. Wilkes-Barre Hosp. Co.,* No. 3:11-CV-0546, 2014 U.S. Dist. LEXIS 63823, at *5 (M.D. Pa. May 8, 2014). Those factors include:

1. the likely complexity, length, and expense of continued litigation;

2. the class's reaction to the settlement;

3. the stage of the proceedings and amount of discovery completed;

4. the risks of establishing liability;

5. the risks of establishing damages;

6. the risks of maintaining the class action through trial;

7. the defendants' ability to withstand a greater judgment;

8. the range of reasonableness of the settlement fund in light of the best possible recovery; and

9. the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.*

### 6. The Settlement provides a fair resolution of disputed claims.

For purposes of preliminary approval, the Rule 23 settlement factors need not be considered. However, for simplicity's sake, we will address them here. In doing so, Plaintiff will necessarily demonstrate that, at a minimum, preliminary approval is appropriate. Discussion of these factors will also make clear that this settlement meets the requirement for FLSA approval, *i.e.*, the settlement resolves a bona fide dispute and the settlement is fair and reasonable.

*The Likely Complexity, Length, and Expense of Continued Litigation (Factor 1)*. This case is a hybrid class/collective action under federal and state wage and hour laws. As other courts have held, "FLSA actions are complex." *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018). Hybrid class/collective actions that involve the FLSA and state law wage claims are the "most complex type." *Id.*

Moreover, this type of case—*i.e.*, one involving delivery driver reimbursement rates—is especially complex. In evaluating a settlement in in another pizza delivery driver case, one court held

> this case involved complex issues of fact and law regarding the legally-mandated reimbursement rate for delivery drivers. These issues would require substantial briefing, discovery, and potential expert testimony. Resolving these issues and the remaining discovery, procedural, merits, and damages questions would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this weighs in favor of the settlement.

*Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, *5 (S.D. Ohio Oct. 17, 2018). As in *Arledge*, this factor weighs in favor of settlement.

10

***The Class's Reaction to the Settlement (Factor 2)***. No class member has objected or opted out. Therefore, this factor weighs in favor of settlement approval.

***The Stage of the Proceedings and Amount of Discovery Completed (Factor 3)***. This case settled at a relatively early stage in the proceedings. The parties agreed to distribute collective action notice and agreed to an exchange of information for settlement purposes that would allow both sides to be "fully informed as to the strengths and weaknesses of their respective positions." *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *12 (S.D. Ohio Nov. 5, 2020). Counsel for both parties have litigated dozens of pizza delivery driver under-reimbursement cases and were informed by those prior cases when evaluating the strengths and weaknesses of this case. In approving a different pizza delivery drivers settlement, the Southern District of Ohio said of Plaintiff's counsel: "Plaintiff's counsel, having established an expertise in 'pizza delivery driver' litigation, have expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. Southern Ohio Pizza*, No. 1:17-cv-146, 2019 U.S. Dist. LEXIS 11019, *14 (S.D. Ohio Jan. 18, 2019). Likewise, Defendants' counsel, Fisher & Phillips, has extensive experience and expertise in pizza delivery driver litigation. Thus, the parties were able to accurately assess the claims in this case. This factor supports approval of the settlement.

***The Risks of Establishing Liability and Damages (Factors 4 and 5)***. This case presents substantial risks for Plaintiff and the class members related to establishing liability and damages.

In large part, the underlying facts are not in dispute and are discernible from Defendants' business records. Specifically, Defendants' delivery drivers drove approximately 2,184,808.52

11

miles during the relevant time. During that time, Defendants reimbursed the drivers $655,016.58. This is an average reimbursement rate of approximately $0.30 per mile.

A key dispute in this case centers on determining the appropriate legal standard. This is a vigorously disputed legal issue across the nation. In the last two years, numerous courts and arbitrators have come to divergent opinions on the proper legal standard for reimbursing delivery drivers. Some support Plaintiff's position. *See, e.g., Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790. Some support Defendants' position. *Kennedy*, 2020 U.S. Dist. LEXIS 154792. On August 31, 2020, the Department of Labor weighed in and seemingly supported Defendants' position. *See* Opinion Letter, FLSA2020-12.

Thus, both parties risked an adverse ruling on several key issues including: (1) does the IRS rate apply or can Defendants reasonably approximate the drivers' expenses? and (2) if "reasonable approximation" applied, what *is* a reasonable approximation? Those two issues alone, if resolved in Defendants' favor, could have resulted in defense verdict, with Plaintiff receiving no damages for the case's primary claim. On the flip side, if Plaintiff prevailed, it would have resulted in a financially devastating, multi-million dollar verdict.

If Plaintiff prevailed and the Court adopted the standard from the DOL Handbook, then the under-reimbursed amount is approximately $546,628.11. From there, Plaintiff would have sought liquidated damages under the FLSA at 1× unpaid wages, liquidated damages under the Pennsylvania Wage Payment and Collection Law at 25% of unpaid wages, and any amount by which Defendants were unjustly enriched. While these additional amounts could be very substantial, but it is unlikely Defendants would have been able to pay a full judgment amount, especially after paying the cost of defense for a trial and appeal.

If Defendants prevailed, however, then the parties would dispute whether Defendants "reasonably approximated" the drivers' expenses. This dispute is generally determined by reference to competing expert witnesses who testify as to what reimbursement rate is "reasonably approximate" to the drivers' expenses. Defendants would then have the opportunity to prove that the amount they paid meets this standard, thereby eliminating Plaintiff's claims. Alternatively, Defendants could prove that, at a minimum, the under-reimbursement was only a few cents, thereby reducing Plaintiff's potential damages to a very small amount. And, of course, Plaintiff could prove that the IRS rate is, in fact, the proper "approximation" of expenses. *See, e.g., Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014).

As it stands, the Agreement provides substantial relief, particularly considering the unsettled law in this area. This factor supports approval of the settlement.

***The Risk of Maintaining the Class Through Trial (Factor 6)***. Here, the parties have very different outlooks on the propriety of class certification through trial. As with the reimbursement standard, there is no circuit court guidance. Certainly, a number of cases grant class certification, but few deal with decertification at the conclusion of discovery. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, Case No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 6, 2018) ("*Brandenburg I*") (granting Rule 23 class certification of a pizza delivery driver case). Here, Defendants would have opposed class certification if a settlement had not been reached. *See Ferreras v. American Airlines, Inc.*, 947 F.3d 178, 180; 183-185 (3d Cir. 2019) (explaining that a "rigorous analysis" is required for class certification). This factor supports approval of the settlement.

*Defendants' Ability to Withstand a Greater Judgment (Factor 7)*. This is one of the most important factors supporting approval of the settlement. Defendants own 6 Domino's Pizza stores with low profit margins. . Mediation of this matter took place with retired Magistrate Judge Bradford Stillman in the midst of the COVID-19 pandemic.  Based on the information available to Plaintiff, this settlement represents about the most Defendants can reasonably pay. Moreover, this amount is in proportion with other pizza delivery driver settlements (many of which were also based primarily on ability to pay) negotiated with Plaintiff's counsel. *See, e.g., Arledge v. Domino's Pizza, Inc.*, No. 3:13-cv-386, 2018 U.S. Dist. LEXIS 179474 (S.D. Ohio Oct. 17, 2018) (a $1,100,000 settlement on behalf of drivers at 20 stores); *Mullins,* 2019 U.S. Dist. LEXIS 11019 (a $1,425,000 settlement on behalf of drivers at 20 stores); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *2 (S.D. Ohio Nov. 25, 2019) ("*Brandenburg II*") (approving settlement of $1,140,000 on behalf of drivers at 18 stores); *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio) ($750,000 settlement on behalf of drivers at approximately 15 stores); *Young v. Rolling in the Dough, Inc.*, No. 1:17-cv-07825, 2020 U.S. Dist. LEXIS 35941, at *15 (N.D. Ill. Feb. 26, 2020) (settlement of $807,500 on behalf of drivers at 15 stores).

*The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All of the Attendant Risks of Litigation (Factors 8 and 9).* Based on Defendants' records, Plaintiff was able to calculate the potential damages in this case.

If using Plaintiff's asserted approximate IRS standard business mileage rate of $.55 per mile, the delivery drivers' total possible unpaid wages were $546,628.11. Those who filed a FLSA consent to join form could also be entitled to an additional amount equal to their unpaid

14

wages as liquidated damages. Based on the data provided by Defendants, Plaintiff estimates the opt-ins would therefore potentially be entitled to $154,301.64 in liquidated damages. In addition, the entire class could be entitled to liquidated damages under Pennsylvania law at 25% of unpaid wages, or $136,657.03.

Thus, all in, the maximum amount potentially owed to the class is $837,586.78, plus attorneys' fees and costs. Obviously, Defendants had a number of arguments to reduce this number significantly, even to zero. As it is, the settlement represents approximately 56% of the class's best-day unpaid wages and 36% of the class's best-day total damages. Pure litigation risk, however, is not the only risk in this case. This type of case is expensive and time-consuming. It could involve expert testimony and the costs associated with those experts. All of this would present a drain on Defendants' resources such that a settlement now may allow for a superior recovery, even if Plaintiff ultimately proved successful at the conclusion of litigation. An uncollectable judgment of $800,000 is of far less value than a collectable settlement of $303,750.

Plaintiff believes that this settlement represents a fair, adequate, and reasonable resolution of this lawsuit. *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding a settlement of 10% of the total sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2016 U.S. Dist. LEXIS 140759, at *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *20 (N.D. Ohio Mar. 8, 2010) (finding that a recovery of

one-third of the owed wages for class members, before deducting attorneys' fees and costs, is "well above" average). This factors supports settlement approval.

### 7. The payment of attorney's fees and costs is reasonable.

In its Order Granting Preliminary Approval, the Court provisionally approved Plaintiff's Counsel's request for attorney's fees and costs. Doc. 39 at ¶ 9. The Court explained that "fees and costs will be approved after the final hearing occurs, taking into account any objections." No class member has objected to the fee amount.

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($101,250.00). This is the standard amount awarded in district courts within the Third Circuit. *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ. A 00-cv-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005). When awarding attorney's fees in common fund cases, courts in the Third Circuit generally favor the percentage-of-recovery method. *In re Diet Drugs*, 584 F.3d 524, 540 (3d Cir. 2009). An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *5; *see also, e.g., Sullivan v. Lewisburg Pizza,* No. 3:18-cv-1455, Doc. 98 (M.D. Pa. Feb. 19, 2021) (approving 1/3 attorneys' fees in pizza delivery driver settlement).[2] Further, to date, Class Counsel has incurred $6,735.37 in costs related to mediation, service, filing fees, pro hac vice motions, sending notice of a collective

---

[2] *See also Crevatas v. Smith Smith Mgmt. & Consulting, LLC*, 2017 U.S. Dist. LEXIS 40857, at *13 (M.D. Pa. Mar. 22, 2017). "An award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit." *See Martin v. Foster Wheeler Energy Corp.*, No. 3:06-CV-0878, 2008 U.S. Dist. LEXIS 25712, at *15 (M.D. Pa. Mar. 31, 2008); *In re Penn Treaty Am. Corp.*, Civ. A. No. 01-1896 (E.D. Pa. Feb. 5, 2004) (awarding 30% of $2.3 million settlement fund); *In re Corel Corp. Sec. Litig.*, 293 F.Supp.2d 484, 495-98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund, plus expenses); *Brumley v. Camin Cargo Control, Inc.*, Nos. 08 Civ. 1798, 2012 U.S. Dist. LEXIS 40599, at *9 (D.N.J. Mar. 26, 2012) (granting attorneys' fee request of one-third of $3.9 million settlement fund in wage and hour class action); *Williams v. Aramark Sports, LLC*, No. 10 Civ. 1044, 2011 U.S. Dist. LEXIS 4018205, at *10-11 (E.D. Pa. Sept. 9, 2011) (granting attorneys' fees of 33% of $587,500 common fund in wage and hour class action); *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011) (approving fee award of 33% in wage and hour class action).

action, and administration costs.  Class Counsel will incur additional time and costs in preparing for final approval and administering the settlement. At the final fairness hearing, the Court will have a full record to be able to evaluate Class Counsels' request for fees and a reimbursement of expenses.

Moreover, in determining what constitutes a reasonable percentage fee award, a district court must consider several factors:

> (1)the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;(9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of the settlement.

*In re Diet Drugs*, 582 F.3d at 541. Class Counsel's fee petition satisfies each factor.

**The size of the fund created and the number of beneficiaries.** The settlement fund provides $303,750.00 for approximately 319 class members, or an average award of approximately $952.19 for each class member. This substantial average payout supports approval.

**The presence of substantial objections by members of the class to the settlement terms or the fees requested by counsel.** No class member objected to the settlement. This factor weighs in favor of approval.

**The skill and efficiency of the attorneys involved.** Both parties were represented by skilled and experience counsel in wage and hour class and collective actions. *See, e.g., Mullins v.*

*S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *5 (S.D. Ohio Jan. 18, 2019) (noting Class Counsel's expertise in pizza delivery driver litigation).

**The complexity and duration of the litigation.** Wage and hour cases are inherently complex. *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *20 (S.D. Ohio May 17, 2021). This factor also supports approval.

**The risk of nonpayment.** As explained in § 2, this area of law is unsettled. If Defendants prevailed on their claim, it is possible the value of Plaintiff's claims would be zero. Alternatively if Plaintiff prevailed, it is possible the requested damages would exceed Defendants' ability to pay.

**The time devoted by the case by plaintiffs' counsel.** Class Counsel's lodestar is approximately $75,280,[3] which represents a multiplier of approximately 1.33, well within the accepted range from one to four. *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 341 (3d Cir. 1998) (noting the acceptable lodestar multiplier range is between one and four).

**The awards in similar cases**. The fee requested (33% of the settlement fund) is in line with awards in similar cases. *See supra* Fn. 2.

**The value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations.** This action was prosecuted solely through the efforts of Class Counsel.

**The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained.** Per the representation agreement with Plaintiff, Class Counsel would be entitled to the one-third amount requested in this fee petition.

---

[3] As of December 23, 2021. Plaintiff's Counsel will incur additional time traveling to and preparing for the final approval hearing.

**Any innovative terms of the settlement.** Class Counsel negotiated a hybrid class and collective wage and hour settlement. This type of settlement has been approved in other cases. *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371 (S.D. Ohio Nov. 25, 2019); *McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836 (S.D. Ohio May 17, 2021).

Accordingly, Plaintiff's fee request satisfies the factors set forth by the Third Circuit.

### 8. The incentive payment is reasonable, and similar payments are routinely awarded.

Plaintiff requests a $10,000 incentive/service award in this case. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Haught v. Summit Resources, LLC*, No. 1:15-cv-0069, 2016 U.S. Dist. LEXIS 45054, at *19 (M.D. Pa. Apr. 4, 2016).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *21. The same considerations apply to this case as well.

The incentive award proposed here has been approved in a number of similar pizza delivery driver settlements. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases).

**9.  For settlement purposes, the Court should certify a class and collective action.**

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions are especially appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiff asks the Court to certify the following hybrid class/collective:

> All current and former non-exempt hourly delivery driver employees who received mileage reimbursements while employed at NWPA's six (6) Domino's Stores during the period from June 26, 2017 to February 28, 2021, who do not exclude themselves.

Defendants consent to certification of the above class for settlement purposes only. In doing so, Defendants do not waive any arguments they have opposing class/collective action certification, should the Court decline to approve the settlement.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). Courts have repeatedly granted Rule 23 class certification in similar cases filed by food delivery drivers. *See, e.g.*, *Waters v. Pizza to You, LLC*, Case No. 3:19-cv-371, 2021 U.S. Dist. LEXIS 11743 (S.D. Ohio Jan. 22, 2021); *Brandenburg I*, 2018 U.S. Dist. LEXIS 189878; *McFarlin v. Word Enters., LLC*, Case No. 16-cv-12536, 2017 U.S. Dist. LEXIS 164968 (E.D. Mich. Oct. 5, 2017); *Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-01335 AGF, 2013 U.S. Dist. LEXIS 181749 (E.D. Mo. Dec. 31, 2013); *Bass v. PJCOMN Acquisition Corp.*, No. 09-cv-01614-REB-MEH, 2011 U.S. Dist. LEXIS 58352, at *18 (D. Colo. June 1, 2011). As described below, all the requirements for class certification are met.

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Pennsylvania law does not contain such a requirement. *See, e.g., Acevedo v. BrightView Landscapes, LLC,* No. 3:13-2529, 2017 U.S. Dist. LEXIS 163870, at *63 (M.D. Pa. Oct. 2, 2017) (approving a hybrid FLSA/state law settlement). Consequently, plaintiffs may maintain class actions for unpaid wages under Civ. R. 23. *Id.*

Because the standard to certify a collective action is easier to meet than the standard under Rule 23, meeting the Rule 23 standard also meets the collective action standard. Therefore, collective action certification is also appropriate here.

### 9.1.    Plaintiff has satisfied the four Rule 23(a) prerequisites for class certification.

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement, each of these requirements is satisfied here. Defendants do not oppose class certification for settlement purposes only.

### 9.1.1.  Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Here, during the relevant time, and as evidenced by the class list they provided for purposes of sending FLSA collective action notice, Defendants employed hundreds of class members that were subject to the pay policies alleged in the Complaint. This easily meets the numerosity requirement.

### 9.1.2. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." A single common question is sufficient to certify a class.

Here, the legal theories and relevant facts are common to the class because the class consists of workers that were harmed in the same way. Plaintiff has identified numerous common questions of law or fact, including, but not limited to: (1) how much Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Outside of the settlement context—*i.e.*, when an employer disputed class certification—courts have found that class certification is appropriate for nearly identical claims. *See, e.g., Waters*, 2021 U.S. Dist. LEXIS 11743, at *27. This case meets the commonality requirement.

### 9.1.3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. Typicality "focuses on whether the interests of the class representative align[ ] with the interests of the absent class members such that the representative is working towards the benefit of the class as a whole." *Acevedo*, 017 U.S. Dist. LEXIS 163870, at *6. A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015) (*quoting Da La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). Typicality focuses on the conduct of a defendant and whether a

proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Id*. "The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3)." *Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill.1999).

Here, Plaintiff is a member of the putative class and his claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiff maintains that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, the same or similar reimbursement rates applied to all class members. Whether Defendants' pay practices are illegal, is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so go the claims of the class." *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 640 (S.D. Ohio 2008). If Defendants' wage and hour practices violate Pennsylvania law as to Plaintiff, they violate Pennsylvania law as to the putative class members; and, accordingly, the typicality requirement is met here.

### 9.1.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) the named plaintiff's adequacy as class representative, and (2) the class counsel's adequacy. *Wall v. Sunoco, Inc.*, 211 F.R.D. 272, 279 (M.D. Pa. 2002). These two requirements are met here.

With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff's interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy

requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff's interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, Plaintiff's counsel is well-qualified to handle this matter. This case is one of many "delivery driver lawsuits" that Plaintiff's counsel is litigating across the nation. Through those cases, counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification. *See, e.g., Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 50403 (S.D. Ohio Mar. 26, 2019) (motion to dismiss); *Hatmaker*, 2019 U.S. Dist. LEXIS 191790 (motion for summary judgment); *Thomas v. Papa John's Int'l, Inc.*, No. 1:17-cv-411, 2019 U.S. Dist. LEXIS 171728, (S.D. Ohio Sept. 29 2019) (contested motion for conditional certification); *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2019 U.S. Dist. LEXIS 161623 (S.D. Ohio Sept. 23, 2019) (motion to dismiss); *Brandenburg I*, 2018 U.S. Dist. LEXIS 189878 (contested motion for class certification). Thus, Plaintiff's counsel is well-versed in this area of law and the strengths and weaknesses of the claims at issue. *See Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *6 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The '[] delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"). Plaintiff's counsel have actively and vigorously pursued Plaintiff's (and the putative class members') claims in this case. Plaintiff's counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case.

### 9.2.    Plaintiff has satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, both of Rule 23(b)(3)'s requirements are met in this case.

### 9.2.1.  Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

There are numerous common questions of law and fact arising out of Defendants' conduct, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for delivery drivers and whether Defendants paid that rate. These issues would be determined based on common proof, and common questions predominate in this case. *See, e.g., Swigart*, 288 F.R.D. at 186. As the court explained in *McFarlin*, the adequacy of Defendants' reimbursement policy will predominate in this case:

> [T]he general issue of the adequacy of the reimbursement policy/policies maintained by Defendants predominate over individual inquiries. Although the damages for each delivery driver will be an individual determination, the damages arise from a course of conduct that is applicable to the entire class: Defendants' payroll practices. Therefore, the predominance requirement is met.

2017 U.S. Dist. LEXIS 164968, at *12.

Although Plaintiff contends that the IRS standard mileage rate applies to drivers as a matter of law, even if not, an expert can opine on a class-wide reimbursement rate. *See generally Perrin*, 114 F.Supp.3d at 722 (considering Plaintiff's expert report in summary judgment determination). Thus, either way—IRS rate or reasonable approximation—one of the primary issues in this case, the appropriate reimbursement rate, is determinable on a class-wide basis, easily meeting the predominance requirement.

### 9.2.2.  A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g., Tedrow v. Cowles*, No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers."). Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other,

similar litigation pending in Pennsylvania. A final resolution of Defendants' liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

**10. Conclusion**

Plaintiff asks the Court to enter an Order: (1) granting final approval of the settlement; (2) approving Class Counsel's request for attorneys' fees and costs; and (3) approving Plaintiff's service awards.

Finally, to facilitate administering and completing the settlement process, Plaintiffs ask that the Court retain jurisdiction over the settlement.

Respectfully submitted,

*/s/ Andy Biller*
Andrew R. Biller
Philip J. Krzeski (*admitted pro hac vice*)
Biller & Kimble, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*pkzeski@billerkimble.com*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


*/s/ Andy Biller*
Andrew R. Biller