In the United States District Court
for the Western District of Pennsylvania

| | |
|---|---|
| Phillip Chludzinski,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>NWPA Pizza, Inc., *et al.*,<br><br>Defendants. | Case No. 1:20-cv-163<br><br>Judge Cathy Bissoon |

Order Granting Plaintiff's Unopposed Motion for Final Settlement Approval

Before the Court is Plaintiffs' Unopposed Motion for Final Settlement Approval. *See* Doc. 40. The Court, having reviewed Plaintiff's Unopposed Motion for Final Settlement Approval and considered the arguments made during the Final Approval Hearing, hereby GRANTS Plaintiff's Motion.

1. **Background of the Lawsuit and the Claims**

Plaintiff Phillip Chludzinski was a pizza delivery driver for Defendants' Domino's franchise. Defendants operated approximately six Domino's locations in Pennsylvania during the relevant time.

On June 26, 2020, Plaintiff filed this lawsuit on behalf of himself and allegedly similarly-situated delivery driver employees. Doc. 1. Shortly thereafter, on August 7, 2020, Plaintiff filed a Motion to Send Notice to Similarly Situated Employees. Doc. 4. Rather than engage in motion practice relating to the Motion to Send Notice, the parties entered into a stipulation to send FLSA collective action notice. The parties reached an agreement and, on September 25, 2020, jointly

moved to send FLSA collective action notice. Doc. 15. Notice was distributed to 239 delivery drivers between October 29, 2020 and December 28, 2020. At the close of the notice period, 58 delivery drivers submitted consent to join forms. *See* Docket. After the close of the FLSA collective action notice period, the parties attended mediation and reached the Settlement Agreement now presented to this Court.

This lawsuit alleges several wage and hour claims, all centered on Defendants' policy of reimbursing delivery drivers for the use of their vehicles. Specifically, Defendants' delivery drivers used their own vehicles to deliver the Defendants' pizza and other food. The parties' dispute centers on whether Defendants adequately reimbursed Plaintiff and other drivers for their vehicle expenses.

Plaintiff contends that, in order to adequately reimburse delivery drivers, employers must either (1) track and reimburse each drivers' actual expenses or (2) reimburse each driver at the IRS mileage rate. *See, e.g., Waters v. Pizza to You, LLC,* No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604, *6-7 (S.D. Ohio May 7, 2021), citing DOL Field Operations Handbook § 30c15(a)(2000). Plaintiff alleges that Defendants did neither and this under-reimbursement dropped the delivery drivers' wages below the legally-permissible minimum wage.

Defendants deny all allegations of unlawful conduct and expressly deny that they under-reimbursed delivery drivers. Defendants allege that the reimbursements paid more than covered driving expenses for Plaintiff and putative class members. Defendants also maintain they are not required to reimburse at the IRS rate or reimburse actual expenses, but instead may reasonably approximate the expenses associated with employees' business use of their personal vehicles. *Blose v. Jarinc, Ltd.*, Case No. 1:18-cv-2184-RM-SKC (D. Colo. Sept. 14, 2020); *Kennedy v. Mountainside Pizza, Inc.*, 2020 U.S. Dist. LEXIS 154792, at *14 (D. Colo. Aug. 26, 2020); *See*

*also* Department of Labor Opinion Letter FLSA-2020-12.  Finally, it is Defendants' position that if the matter were to proceed, Plaintiff would be unable to satisfy the criteria for certifying this matter as a class or collective action.

If Plaintiff's position prevailed, then the underpayment would trigger a number of wage-related claims, including state and federal minimum wage and overtime claims. If Plaintiff proved certain other facts, Plaintiff could also seek liquidated damages under the FLSA and/or Pennsylvania minimum wage law. On the other hand, if Defendants' position prevailed, Defendants could prove that either (1) they met the applicable legal standard (meaning Plaintiff is not entitled to anything) or (2) any under-reimbursement was minimal, thereby greatly reducing Plaintiff's damages.

On June 16, 2021, the parties presented the Settlement Agreement to the Court for preliminary approval. Doc. 37. The Court preliminarily approved the Settlement Agreement on July 21, 2021. Doc. 39.

Following approval, Plaintiffs employed a professional claims administrator (CAC Services Group) to send a notice of settlement to the putative class members. The Administrator sent notice by first class mail to approximately 319 individuals. Through address correction and skip-tracing, mail was returned as undeliverable for only 25 individuals (or approximately 7.8% of the class). No class member objected, and no class member opted out.

**2. Settlement Agreement**

The parties' Settlement Agreement requires Defendants to pay a total of $303,750.00 to resolve Plaintiff's and the putative class members' claims in this lawsuit. The $303,750 is inclusive of expenses, reimbursements, unpaid wages, improper deductions and withholdings, tip

credit notice violations, liquidated damages, interest, expenses, taxes, service awards, and attorney's fees.

**Distribution of Settlement**

The distributions are as follows:

1. First, all court-awarded amounts (i.e., for attorney's fees, service awards, expenses, etc.) will be subtracted from the $303,750.00. The remainder is the "Net Settlement Fund."

2. Each Class Member's check will be equal to the Class Member's prorated share of the Net Settlement Fund based on the miles driven by each Class Member during the Class Period, divided by the total miles driven by all Class Members during the Settlement Period, with the miles driven by those who submitted a Consent to Join form on or before March 31, 2021 counted at 1.25x.

3. Within 40 days of the Court granting final approval of this Settlement Agreement, the Administrator will issue checks to each Class Member who does not exclude themselves.

4. Checks may be cashed or negotiated within 160 days of being issued. After 160 days, the check will be void. The face of each check will contain the following language: "Void after 160 days." The proceeds of any voided checks will be distributed to the Contingency Fund.

5. The amount of any uncashed checks from the Settlement Fund will be retained in the Qualified Settlement Fund and referred to as the "Contingency Fund."

6. Class Members may request that the Administrator reissue stale checks (i.e., checks that were not cashed within 160 days) and the Administrator shall reissue said checks 14 days after Notice to Class and Defendants' Counsel unless a dispute arises.

7. Class Members can make a claim against the Contingency Fund by contacting the Claims Administrator or Class Counsel via email or U.S. mail, or other means established by the Claims Administrator. The Administrator may request any additional identifying information or documents (if any) that the Administrator reasonably believes necessary to confirm the identity of the Class Member and status as a Class Member.

8. Distributions from the Contingency Fund shall be in the amount to replace checks previously distributed (less administrative expenses incurred for such

        replacements to the extent such are incurred by Claims Administrator, e.g., a stop payment fee).

9.    Distributions out of the Contingency Fund will be made 14 days after Notice to Class and Defendants' Counsel of the submission of a valid claim being received by the Administrator.

10.    Any unclaimed amounts in the Contingency Fund as of March 1, 2024 will be distributed fifty-percent to Crawford Heritage Community Foundation and fifty-percent to Domino's Partners Foundation, a 503(c)(3) non-profit organization organized to help Domino's Team members in times of hardship and adversity. Distributions shall be made within 200 days after March 1, 2024.

11.    To the extent that there is a dispute regarding this process, the Parties and their Counsel will attempt to informally resolve the dispute. If informal resolution is unsuccessful, the Parties will request the assistance of the Claims Administrator, or if the Claims Administrator cannot resolve the dispute, the Parties shall submit the dispute to the Court for assistance in reaching resolution.

12.    Each check will be treated as expense reimbursement up to the IRS rate, which shall be a blended IRS rate of $.55 for purposes of this Settlement. Any amounts paid above that will represent liquidated damages and will not be considered wages or subject to withholding. A Form 1099 will issue to Class Members for monies paid as liquidated damages.

**Releases**

Opt in Plaintiffs and those who cash or negotiate their check agree to the following release of claims:

> Each Opt-In Class Member and any Class Member who cashes or negotiates a settlement check releases all wage and hour claims against the Released Parties[1] accrued from June 26, 2017 through February 28, 2021 arising out of the facts asserted in the Lawsuit, that were made against NWPA or the Released Parties, including claims relating to failure to pay wages, the under-reimbursement of mileage and any other business expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, untimely payment claims, and

---

[1] The Settlement Agreement defines Released Parties as follows: The term "Released Parties" includes NWPA Pizza, Inc., Paul Mohtashemi, Jennifer Mohtashemi, and any related entities, along with all respective owners, members, stockholders, franchisors, including Domino's Pizza LLC (and its related entities), predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, insurers, subsidiaries, affiliates, insurance carriers and all persons acting by, through, under or in concert with them. Settlement Agreement, ¶ 6(B).

> any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) including any related claims for liquidated damages, penalties, attorneys' fees and costs, taxes (if applicable), service awards, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the wage and hour laws of Pennsylvania and any applicable federal, state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit, including the right to arbitrate said claims.

Settlement Agreement, ¶ 6(B). Class Members who did not opt in and do not cash their check will release their state law claims, as described below, but will not release their FLSA claims:

> Each Opt-In Class Member and any Class Member who cashes or negotiates a settlement check releases all wage and hour claims against the Released Parties accrued from June 26, 2017 through February 28, 2021 arising out of the facts asserted in the Lawsuit, that were made against NWPA or the Released Parties, including claims relating to failure to pay wages, the under-reimbursement of mileage and any other business expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, untimely payment claims, and any related common law and equitable (e.g., breach of contract, unjust enrichment, etc.) including any related claims for liquidated damages, penalties, attorneys' fees and costs, taxes (if applicable), service awards, and interest, that could be pursued under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the wage and hour laws of Pennsylvania and any applicable federal, state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit, including the right to arbitrate said claims.

Settlement Agreement, ¶ 6(D).

**Fees Costs and Awards**

The Settlement Agreement also provides that Defendants will not object to an award of attorneys' fees, costs, and a service award, all of which are to be deducted from and paid out of the Settlement Fund, as follows:

> 1. Subject to Court approval, Class Counsel will receive an award of attorneys' fees in the amount of 1/3 of the Settlement Amount ($101,250), plus reimbursement of advanced litigation expenses/costs, payable within 10 days after the effective date

       of the Settlement Agreement, which is expected to be 40 days after final approval of the settlement.

2. Subject to Court approval, a service award to Named Plaintiff in the amount of $10,000 to be paid out of the Settlement Amount. In exchange for this amount, Named Plaintiff agrees to execute a separate settlement agreement containing a general release of claims.

## 3. Discussion

### 3.1. Class Certification is Appropriate for Settlement Purposes.

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions are appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiff asks the Court to certify the following hybrid class/collective:

> All current and former non-exempt hourly delivery driver employees who received mileage reimbursements while employed at NWPA's six (6) Domino's Stores during the period from June 26, 2017 to February 28, 2021, who do not exclude themselves.

Defendants consent to certification of the above class for settlement purposes only. In doing so, Defendants do not waive any arguments they have opposing class/collective action certification, should the Court decline to approve the settlement. [1] The Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 and collective action certification pursuant to Section 216(b) for settlement purposes only.

Because the standard to certify a collective action is easier to meet than the standard under Rule 23, meeting the Rule 23 standard also meets the collective action standard. Therefore, collective action certification, for settlement purposes, is also appropriate here.

### 3.2. Plaintiff satisfies the four Rule 23(a) prerequisites for class certification.

Under Rule 23(a), Plaintiff must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2)

"questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement, each of these requirements is satisfied here. Defendants do not oppose class certification for settlement purposes only.

### 3.2.1. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. Here, during the relevant time, and as evidenced by the class list they provided for purposes of sending FLSA collective action notice, Defendants allegedly employed hundreds of class members that were subject to the pay policies alleged in the Complaint. This meets the numerosity requirement.

### 3.2.2. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." A single common question is sufficient to certify a class.

Here, Plaintiff alleges that the legal theories and relevant facts are common to the class because the class consists of workers that were harmed in the same way. Plaintiff identified common questions of law or fact, including, but not limited to: (1) how much Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Defendants do not contest that commonality is satisfied for settlement purposes.

### 3.2.3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. Typicality "focuses on whether the interests of the class representative align[ ] with the interests of the absent class members such that the representative is working towards the benefit of the class as a whole." *Acevedo*, 017 U.S. Dist. LEXIS 163870, at *6

Here, Plaintiff alleges that he is a member of the putative class and his claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiff maintains that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, Plaintiff alleges that the same or similar reimbursement rates applied to all class members. Plaintiff alleges that whether Defendants' pay practices are illegal, is a question answerable on a class-wide basis.   Defendants do not contest that typicality is satisfied for settlement purposes.

### 3.2.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) the named plaintiff's adequacy as class representative, and (2) the class counsel's adequacy. *Wall v. Sunoco, Inc.*, 211 F.R.D. 272, 279 (M.D. Pa. 2002). Plaintiff alleges that these two requirements are met here.

With respect to the first inquiry, because Plaintiff is challenging the same unlawful conduct and seeking the same relief as would the rest of the class members, Plaintiff alleges that his interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g.,* ; *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiff alleges that his interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, Plaintiff alleges that his counsel is well-qualified to handle this matter. This case is one of many "delivery driver lawsuits" that Plaintiff's counsel is litigating across the nation. *Brandenburg v. Cousin Vinny's Pizza*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *18 (S.D. Ohio Nov. 25, 2019). Plaintiff further alleges that his counsel have actively and vigorously pursued Plaintiff's (and the putative class members') claims in this case and that Plaintiff's counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case. Defendants do not contest that adequacy is satisfied for settlement purposes.

### 3.2.5. Plaintiff has satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class mechanism is superior to other methods of relief. As discussed below, Plaintiff alleges that both of Rule 23(b)(3)'s requirements are met in this case.

#### 3.2.5.1. Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

Plaintiff alleges that there are numerous common questions of law and fact arising out of Defendants' alleged conduct, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for delivery drivers and whether Defendants paid that rate. Plaintiff alleges that these issues would be determined

based on common proof, and common questions predominate in this case. Defendants do not contest that predominance is satisfied for settlement purposes.

### 3.2.5.2. A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. Moreover, Plaintiff alleges that efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Pennsylvania against Defendants. Plaintiff further contends that a final resolution of Defendants' liability is fair because the case deals with policies affecting large numbers of employees and final resolution avoids competing decisions on the issues and offers finality and, therefore, there is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id*. (internal citations omitted). Defendants do not contest that superiority is satisfied for settlement purposes.

### 3.3. The Settlement Provides a Fair Resolution of Disputed Claims.

At final approval, the Court conducts a robust valuation, focusing on nine factors. *See Sakalas v. Wilkes-Barre Hosp. Co.,* No. 3:11-CV-0546, 2014 U.S. Dist. LEXIS 63823, at *5 (M.D. Pa. May 8, 2014). Those factors include:

1. the likely complexity, length, and expense of continued litigation;

2. the class's reaction to the settlement;

3. the stage of the proceedings and amount of discovery completed;

4. the risks of establishing liability;

5. the risks of establishing damages;

6. the risks of maintaining the class action through trial;

7. the defendants' ability to withstand a greater judgment;

8. the range of reasonableness of the settlement fund in light of the best possible recovery; and

9. the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* As explained below, the settlement agreement satisfies each factor.

***The Likely Complexity, Length, and Expense of Continued Litigation (Factor 1)***. This case is a hybrid class/collective action under federal and state wage and hour laws. As other courts have held, "FLSA actions are complex." *Snead v. Interim HealthCare of Rochester, Inc.*, 286 F. Supp. 3d 546, 558 (W.D.N.Y. 2018). Hybrid class/collective actions that involve the FLSA and state law wage claims are the "most complex type." *Id.*

Moreover, this type of case—*i.e.*, one involving delivery driver reimbursement rates—is especially complex. In evaluating a settlement in in another pizza delivery driver case, one court held

> this case involved complex issues of fact and law regarding the legally-mandated reimbursement rate for delivery drivers. These issues would require substantial

12

> briefing, discovery, and potential expert testimony. Resolving these issues and the remaining discovery, procedural, merits, and damages questions would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this weighs in favor of the settlement.

*Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, *5 (S.D. Ohio Oct. 17, 2018). As in *Arledge*, this factor weighs in favor of settlement.

***The Class's Reaction to the Settlement (Factor 2)***. No class member has objected or opted out. Therefore, this factor weighs in favor of settlement approval.

***The Stage of the Proceedings and Amount of Discovery Completed (Factor 3)***. This case settled at a relatively early stage in the proceedings. The parties agreed to distribute collective action notice and agreed to an exchange of information for settlement purposes that would allow both sides to be "fully informed as to the strengths and weaknesses of their respective positions." *Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *12 (S.D. Ohio Nov. 5, 2020). Counsel for both parties have litigated dozens of pizza delivery driver under-reimbursement cases and were informed by those prior cases when evaluating the strengths and weaknesses of this case. Thus, the parties were able to accurately assess the claims in this case. This factor supports approval of the settlement.

***The Risks of Establishing Liability and Damages (Factors 4 and 5)***. This case presents

A key dispute in this case centers on determining the appropriate legal standard. This is a vigorously disputed legal issue across the nation. In the last two years, numerous courts and arbitrators have come to divergent opinions on the proper legal standard for reimbursing delivery drivers. Some support Plaintiff's position. *See, e.g., Hatmaker v. PJ Ohio, LLC*, 2019 U.S. Dist. LEXIS 191790. Some support Defendants' position. *Kennedy*, 2020 U.S. Dist. LEXIS 154792. On August 31, 2020, the Department of Labor weighed in and seemingly supported Defendants' position. *See* Opinion Letter, FLSA2020-12.

13

Thus, both parties risked an adverse ruling on several key issues including: (1) does the IRS rate apply or can Defendants reasonably approximate the drivers' expenses? and (2) if "reasonable approximation" applied, what *is* a reasonable approximation? Those two issues alone, if resolved in Defendants' favor, could have resulted in defense verdict, with Plaintiff receiving no damages for the case's primary claim.

As it stands, the Agreement provides substantial relief, particularly considering the unsettled law in this area. This factor supports approval of the settlement.

***The Risk of Maintaining the Class Through Trial (Factor 6)***. Here, the parties have very different outlooks on the propriety of class certification through trial. As with the reimbursement standard, there is no circuit court guidance. A number of cases grant class certification, but few deal with decertification at the conclusion of discovery. *See, e.g., Brandenburg v. Cousin Vinny's Pizza, LLC*, Case No. 3:16-cv-516, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 6, 2018) ("*Brandenburg I*") (granting Rule 23 class certification of a pizza delivery driver case). Here, Defendants would have sought to decertify the collective and would have opposed class certification if a settlement had not been reached. *See Ferreras v. American Airlines, Inc.*, 947 F.3d 178, 180; 183-185 (3d Cir. 2019) (explaining that a "rigorous analysis" is required for class certification). This factor supports approval of the settlement.

***Defendants' Ability to Withstand a Greater Judgment (Factor 7)***. This is an important factors supporting approval of the settlement. Defendants own 6 Domino's Pizza stores with low profit margins. Mediation of this matter took place with retired Magistrate Judge Bradford Stillman in the midst of the COVID_19 pandemic. Based on the information available to Plaintiff, this settlement represents about the most Defendants can reasonably pay.

***The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All of the Attendant Risks of Litigation (Factors 8 and 9).*** Based on Defendants' records, Plaintiff was able to calculate the potential damages in this case.

If using Plaintiff's asserted approximate IRS standard business mileage rate of $.55 per mile, the delivery drivers' total possible unpaid wages were $546,628.11. Those who filed a FLSA consent to join form could also be entitled to an additional amount equal to their unpaid wages as liquidated damages. Based on the data provided by Defendants, Plaintiff estimates the opt ins would therefore potentially be entitled to $154,301.64 in liquidated damages. In addition, Plaintiff contends that the entire class could be entitled to liquidated damages under Pennsylvania law at 25% of unpaid wages, or $136,657.03.

Thus, all in, the maximum amount potentially owed to the class is $837,586.78, plus attorneys' fees and costs. Obviously, Defendants had a number of arguments to reduce this number significantly, even to zero. As it is, the settlement represents approximately 56% of the class's best-day unpaid wages and 36% of the class's best-day total damages. Pure litigation risk, however, is not the only risk in this case. This type of case is expensive and time-consuming. It could involve expert testimony and the costs associated with those experts. All of this would present a drain on Defendants' resources such that a settlement now may allow for a superior recovery, even if Plaintiff ultimately proved successful at the conclusion of litigation. An uncollectable judgment of $800,000 is of far less value than a collectable settlement of $303,750. Plaintiff believes that this settlement represents a fair, adequate, and reasonable resolution of this lawsuit.

Based on the factors listed above, the Court GRANTS settlement approval.

The Court therefore APPROVES the parties' Settlement Agreement as fair, adequate, and reasonable pursuant to FED. R. CIV. P. 23(e)(2.

Likewise, the Court APPROVES the parties' Settlement Agreement and determines that the settlement is a reasonable compromise of a bona fide dispute of the claims and defenses in this matter and, there is nothing in the record to suggest that the settlement would otherwise frustrate the implementation of the FLSA

**4. Payment of attorneys' fees is reasonable.**

In its Order Granting Preliminary Approval, the Court provisionally approved Plaintiff's Counsel's request for attorney's fees and costs. Doc. 39 at ¶ 9. The Court explained that "fees and costs will be approved after the final hearing occurs, taking into account any objections." No class member has objected to the fee amount.

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($101,250.00). This is the standard amount awarded in district courts within the Third Circuit. *In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ. A 00-cv-1014, 2005 U.S. Dist. LEXIS 6680 (E.D. Pa. Apr. 18, 2005). When awarding attorney's fees in common fund cases, courts in the Third Circuit generally favor the percentage-of-recovery method. *In re Diet Drugs*, 584 F.3d 524, 540 (3d Cir. 2009). An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *5; *see also, e.g., Sullivan v. Lewisburg Pizza,* No. 3:18-cv-1455, Doc. 98 (M.D. Pa. Feb. 19, 2021) (approving 1/3 attorneys' fees in pizza delivery driver settlement).[2] Further, to date, Class Counsel has incurred $ 6,735.37 in

---

[2] *See also Crevatas v. Smith Smith Mgmt. & Consulting, LLC*, 2017 U.S. Dist. LEXIS 40857, at *13 (M.D. Pa. Mar. 22, 2017). "An award of one-third of the settlement is consistent with similar settlements throughout the Third Circuit." *See Martin v. Foster Wheeler Energy Corp.*, No. 3:06-CV-0878, 2008 U.S. Dist. LEXIS 25712, at *15 (M.D. Pa. Mar. 31, 2008); *In re Penn Treaty Am. Corp.*, Civ. A. No. 01-1896 (E.D. Pa. Feb. 5, 2004) (awarding 30% of $2.3 million

litigation costs related to mediation, service, filing fees, pro hac vice motions, sending notice of a collective action, and administration costs.  Class Counsel will incur additional time and costs in preparing for final approval and administering the settlement.

Moreover, in determining what constitutes a reasonable percentage fee award, a district court must consider several factors:

> (1)the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations;(9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of the settlement.

*In re Diet Drugs*, 582 F.3d at 541. Class Counsel's fee petition satisfies each factor.

**The size of the fund created and the number of beneficiaries.** The settlement fund provides $303,750.00 for approximately 319 class members, or an average award of approximately $952.19 for each class member. This substantial average payout supports approval.

**The presence of substantial objections by members of the class to the settlement terms or the fees requested by counsel.** No class member objected to the settlement. This factor weighs in favor of approval.

---

settlement fund); *In re Corel Corp. Sec. Litig.*, 293 F.Supp.2d 484, 495-98 (E.D. Pa. 2003) (awarding one-third of $7 million settlement fund, plus expenses); *Brumley v. Camin Cargo Control, Inc.*, Nos. 08 Civ. 1798, 2012 U.S. Dist. LEXIS 40599, at *9 (D.N.J. Mar. 26, 2012) (granting attorneys' fee request of one-third of $3.9 million settlement fund in wage and hour class action); *Williams v. Aramark Sports, LLC*, No. 10 Civ. 1044, 2011 U.S. Dist. LEXIS 4018205, at *10-11 (E.D. Pa. Sept. 9, 2011) (granting attorneys' fees of 33% of $587,500 common fund in wage and hour class action); *Hall v. Best Buy Co., Inc.*, 274 F.R.D. 154, 173 (E.D. Pa. 2011) (approving fee award of 33% in wage and hour class action).

**The skill and efficiency of the attorneys involved.** Both parties were represented by skilled and experience counsel in wage and hour class and collective actions. *See, e.g.*, *Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *5 (S.D. Ohio Jan. 18, 2019) (noting Class Counsel's expertise in pizza delivery driver litigation).

**The complexity and duration of the litigation.** Wage and hour cases are inherently complex. *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *20 (S.D. Ohio May 17, 2021). This factor also supports approval.

**The risk of nonpayment.** As explained in § 2, this area of law is unsettled. If Defendants prevailed on their claim, it is possible the value of Plaintiff's claims would be "0.' Alternatively, if Plaintiff prevailed, it is possible the requested damages would exceed Defendants' ability to pay.

**The time devoted to the case by plaintiffs' counsel.** Class Counsel's lodestar is approximately $75,280, which represents a multiplier of 1.28, well within the accepted range from one to four. *Krell v. Prudential Ins. Co. of Am.*, 148 F.3d 283, 341 (3d Cir. 1998) (noting the acceptable lodestar multiplier range is between one and four).

**The awards in similar cases**. The fee requested (33% of the settlement fund) is in line with awards in similar cases. *See supra* Fn. 2.

**The value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations.** This action was prosecuted solely through the efforts of Class Counsel.

**The percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained.** Per the representation

agreement with Plaintiff, Class Counsel would be entitled to the one-third amount requested in this fee petition.

**Any innovative terms of the settlement.** Class Counsel negotiated a hybrid class and collective wage and hour settlement.

Accordingly, the Court GRANTS Class Counsel's request for attorney's fees.

5. **Service Awards.**

The Court also approves the request for service awards in the amount of $10,000 to Phillip Chludzinski. Plaintiff provided valuable insight to Class Counsel throughout the case, and his efforts resulted in substantial payments to a class of over 300 minimum wage pizza delivery drivers. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *Haught v. Summit Resources, LLC*, No. 1:15-cv-0069, 2016 U.S. Dist. LEXIS 45054, at *19 (M.D. Pa. Apr. 4, 2016).

The requested incentive award is reasonable. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases). Accordingly, the Court GRANTS Plaintiff's request for service awards.

Accordingly, the Court GRANTS the requested incentive award.

6. **Conclusion**

The Court hereby GRANTS Plaintiffs' Unopposed Motion for Final Settlement Approval. The Court further GRANTS Plaintiffs' attorney's fee request of $101,250.00, grants an award of expenses of $6,735.37, and the $10,000 incentive awards for the class representative.

The action is hereby DISMISSED WITH PREJUDICE, with the Court to retain jurisdiction over the implementation, administration, enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto. The Parties are ordered to carry out the settlement according to its terms.

IT IS SO ORDERED, this __6th__ day of January, 2022.

                                                  _s/Cathy Bissoon_
                                                Judge Cathy Bissoon